**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIC J. MOLITOR,

Plaintiff,

v.

UNKNOWN MICHIGAN STATE POLICE OFFICERS 1–10, in their individual capacities,

Defendants.

Case No.

Hon.

---

CARSON J. TUCKER (P62209)
LEX FORI, PLLC
ATTORNEY FOR PLAINTIFF
1250 W. 14 MILE ROAD
SUITE 3020
TROY, MI 48083
(734) 887-9261

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now Comes Plaintiff, Eric J. Molitor, by and through his attorneys, Lex Fori PLLC, and states as follows.

## I. NATURE OF THE ACTION

1. In October 2020 the State of Michigan accused Plaintiff of participating in a conspiracy to kidnap the Governor. It held him in a county jail for three months. It took a sample of his DNA. Nearly three years later, on September 15, 2023, a jury acquitted him of every charge.

2. He was a private security contractor who had done paid work under the supervision of two men who identified themselves to him as serving Deputy United States Marshals. He had attended and helped organize lawful political rallies. He had coordinated openly with a law

enforcement liaison to keep his group's activity lawful. He owned firearms lawfully. He was convicted of nothing, and remains convicted of nothing.

3. This action makes three claims about what the State did to Plaintiff.

4. **What it did.** Defendants caused Plaintiff to be charged and detained on process unsupported by probable cause; they mischaracterized and manufactured the evidence against him and withheld what was favorable to him; and they did so because of his political speech, his public assembly, and his association with a lawful civil defense group.

5. Plaintiff brings his claims under 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

7. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202 and injunctive relief under Federal Rule of Civil Procedure 65.

8. Venue lies in this District and Division under 28 U.S.C. § 1391(b)(2). Plaintiff was searched in Wexford County and was charged, detained, tried and acquitted in Antrim County, both within this District and Division.

## III. PARTIES

9. Plaintiff Eric J. Molitor is a natural person residing at 10274 S 39 Road, Cadillac, Wexford County, Michigan.

10. Defendants UNKNOWN MICHIGAN STATE POLICE OFFICERS 1 through 10 are members of the Michigan State Police who participated in, ordered, or knowingly acquiesced in the conduct alleged in this Complaint. Their identities are known to the Michigan State Police and to the named Defendant but are not presently known to Plaintiff. They are sued in their

individual capacities for damages. Plaintiff will seek leave to amend to name them upon learning their identities.

11. Plaintiff has been unable to learn the identities of the Unknown Defendants despite diligent effort. The records that would identify them are held by the Michigan State Police, by the prosecuting authority, and in the file of Plaintiff's former criminal defense counsel. Plaintiff does not possess and has never possessed any of them.

12. Specifically, and before the filing of this Complaint:

(a) On August 20, 2026 Plaintiff requested his criminal case file from his former criminal defense counsel, William Barnett, and asked that it be provided to undersigned counsel. On August 24, 2026 Mr. Barnett responded, declining to produce the file and directing the request instead to another attorney, Damian Nunzio, on the view that the proper course was for Plaintiff to file a civil action and obtain the records in discovery. Mr. Barnett stated that he had previously mailed Plaintiff those pages of the police report bearing Plaintiff's name and had made his office available to Plaintiff for review. No file has been produced to undersigned counsel.

(b) Undersigned counsel, who was copied on the exchange described in subparagraph (a), requested the same file directly from former criminal defense counsel, in writing and copying Plaintiff, on September 15, 2026. No file had been produced to undersigned counsel as of the filing of this Complaint.

(c) Undersigned counsel requested from the Antrim County Clerk, as clerk of the 13th Circuit Court, on September 15, 2026, copying Plaintiff, the circuit court case number, the register of actions, the criminal complaint, the arrest warrant and

the supporting sworn complaint, and a certified copy of the judgment of acquittal entered September 15, 2023. The Clerk responded the same day, supplying the circuit court case number and a register of actions containing no entries after February 15, 2023, notwithstanding that the case master information records an adjudication by jury verdict on September 15, 2023, and directing the request for the judgment of acquittal to the 86th Judicial District Court. Neither the charging documents nor the identity of the complaining witness was produced.

(d) Plaintiff served a request on the Michigan Department of State Police under the Michigan Freedom of Information Act, MCL 15.231 *et seq.*, on September 14, 2026, seeking records sufficient to identify the officers who investigated him, the affiant on the state process issued against him, and the officers present at his questioning at the Michigan State Police post at Cadillac on October 7, 2020. No response, and no notice of extension, had been received as of the filing of this Complaint.

13. The identities of the Unknown Defendants are recorded in the ordinary personnel, assignment and investigative records of the Michigan State Police. They are not obscure and they are not in dispute. They could be supplied in an afternoon. They have not been supplied.

14. Plaintiff has at no time been in a position to compel the production of those records. He was a criminal defendant until September 15, 2023, and thereafter a private citizen with no means of obtaining them other than by request. The register of actions in the circuit court case further records that a protective order was entered on October 23, 2020, and that on February 15, 2023 the court granted the People's motion for a protective order concerning discovery materials.

On information and belief those orders restrict the dissemination of the very materials that would identify the Unknown Defendants, and they remain in force.

15. Each individual Defendant acted under color of state law and within the course of his employment.

16. No federal officer or agency is named as a Defendant, and no claim is asserted against any. The October 7, 2020 search of Plaintiff's residence was conducted on a warrant issued by a United States Magistrate Judge and executed by agents of the Federal Bureau of Investigation, and the property taken that day was held and returned by that agency. Those facts are pleaded because they are the setting of the state prosecution and because they bear on these Defendants' knowledge and motive. They are not pleaded as claims.

17. No claim is asserted against the County of Antrim or any of its employees. The facts of Plaintiff's confinement are pleaded below as the measure of his damages.

## IV. TIMELINESS

18. Plaintiff's federal claims are governed by Michigan's three-year personal-injury limitation period, MCL 600.5805(2). Federal law supplies the rule of accrual.

19. **Counts I, II and III accrued on September 15, 2023,** when the criminal proceeding against Plaintiff terminated in his favor by verdict of acquittal. A claim for unlawful pretrial detention on process unsupported by probable cause, a claim for fabrication of evidence, and a claim for retaliatory prosecution do not accrue until that date. *Thompson v. Clark*, 596 U.S. 36 (2022); *McDonough v. Smith*, 588 U.S. 109 (2019); *Heck v. Humphrey*, 512 U.S. 477 (1994). This Complaint is filed within three years of that date.

20. Plaintiff is not a prisoner confined in any jail, prison, or other correctional facility. The exhaustion requirement of 42 U.S.C. § 1997e(a) and the physical-injury limitation of § 1997e(e) do not apply to this action.

21. As to the Unknown Defendants, Plaintiff pleads the facts set out at ¶¶ 11 through 14 and relies on them to the extent that Federal Rule of Civil Procedure 15(c)(1)(A) permits relation back under the law supplying the applicable limitations period, and to the extent that MCL 600.5855 tolls that period where the identity of a person liable has been concealed.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's protected activity

22. In and before June 2020 Plaintiff associated with the Cadillac Civil Defense, a group organized around lawful political advocacy, the exercise of Second Amendment rights, and public assembly.

23. Plaintiff attended and helped organize the group's public rallies in June 2020. His speech and assembly at those rallies, and his association with the group, were protected by the First Amendment. In the same period Plaintiff was added, on June 22, 2020, to a Michigan militia-affiliated group on Facebook organized by Adam Dean Fox, and posted a public comment on that group's founding announcement reading, "Guns up! And Adam Dean Fox I'm proud to be a part of this brother. Thank you." That comment is pleaded here because it is true, because it was collected by federal investigators and was available to Defendants, and because it is precisely what it appears to be: political speech and association, protected by the First Amendment, made three and a half months before Plaintiff was charged and containing no reference to any plan to harm anyone.

24. Before those rallies the group coordinated openly with law enforcement through a liaison named Duff Leuder, himself a former county sheriff's K-9 trainer. The group's purpose in coordinating was to keep its activity lawful and peaceful, and its activity was lawful and peaceful.

25. Duff Leuder is now deceased. He is survived by his wife, who on information and belief can confirm that he served as the group's law enforcement liaison and later as one of its leaders.

26. After Plaintiff's release from custody he telephoned Leuder. Leuder said, "let's get one thing straight, we've NEVER been in contact before," and then repeatedly accused Plaintiff of working for federal authorities.

27. At all relevant times Plaintiff owned firearms lawfully.

**B. Plaintiff's work for men who identified themselves as Deputy United States Marshals**

28. At the time of the events in this Complaint Plaintiff was employed as a private security contractor. That work was supervised by two men he knew as "Sam Riley" and "Doc."

29. "Sam Riley" is that man's true name; his last known telephone number is (440) 985-0788. Plaintiff never learned Doc's true name. Doc is of Russian origin and, having lived in the United States many years, speaks with only a faint accent.

30. Both men represented to Plaintiff that they were then-serving Deputy United States Marshals. Doc displayed his badge. Riley showed Plaintiff photographs of their work. Plaintiff believed them, and on information and belief the representations were true.

31. Plaintiff was paid through peer-to-peer payment applications. His bank records reflect the payments. His text messages with Riley and Doc are preserved on a mobile telephone in his possession. On information and belief Riley's telephone number remains in service; after Plaintiff's release Riley gave him an employment reference.

32. A man doing paid security work for federal law enforcement personnel is an implausible recruit to a conspiracy against a state Governor, and the fact of that relationship was material and exculpatory.

33. On information and belief, one or more of the Defendants knew, or with minimal investigation would have known, of Plaintiff's relationship with federal law enforcement personnel and of the exculpatory significance of that relationship, before Plaintiff was charged. They neither investigated it nor disclosed it.

**C. The federal search of October 7, 2020**

***Pleaded as setting and as evidence of motive. No claim arises from it. See ¶ 16.***

34. On October 6, 2020 a United States Magistrate Judge sitting at Grand Rapids issued a search and seizure warrant for Plaintiff's residence, W.D. Mich. Case No. 1:20-mj-414, in an investigation of a conspiracy to kidnap the Governor of Michigan under 18 U.S.C. § 1201(c). The federal prosecution that followed, *United States v. Fox*, W.D. Mich. No. 1:20-CR-183 (Jonker, C.J.), charged five men. Plaintiff was not among them.

35. Attachment B to that warrant authorized the seizure of, among other things, "[e]xtremist literature and paraphernalia in the form of videos, books, pamphlets, flags, uniforms, patches and other regalia."

36. That clause identified expressive material by reference to its viewpoint and contained no limitation confining it to items connected to the offense under investigation.

37. On October 7, 2020, approximately forty officers converged without warning on Plaintiff's residence, where his family had gathered for a meal. On information and belief the great majority wore military-style tactical gear including helmets, body armor and long guns.

38. Officers arrived in an armored personnel carrier, deployed one or more aerial drones over the property, and closed the surrounding block.

39. Present at the residence were Plaintiff; his mother, Sue Molitor; his sister, Aimee Molitor, and her minor son; his cousin, Alexis Molitor, and her two minor children; and Plaintiff's own two minor children. Five of the persons present were children.

40. Officers pointed firearms at every person on the property, including all five children. No child was suspected of any offense or posed any threat. No person on the property was armed, resisted, fled, or threatened anyone.

41. Every adult present was handcuffed. Only Plaintiff was ever charged.

42. Among the items officers carried away from Plaintiff's vehicle was a poster reading "ANTIFA for Biden/Harris 2020" and "Justice for Breonna."

43. That poster was evidence of no offense. Its seizure is evidence of what the investigation was interested in.

44. The scale and manner of the operation bore no reasonable relationship to any legitimate need presented by the arrest of one unarmed man at a family dinner. On information and belief it was designed and executed as a show of force and a public spectacle, and the disparity between the force deployed and any threat Plaintiff presented is itself evidence of the animus alleged in Count III. That animus is not inferred from the operation alone. The investigation that produced it proceeded through an undercover Facebook persona used to approach Adam Dean Fox on June 22 and 23, 2020 – the same days on which formal targeting assignments for two undercover employees were opened in the federal case file – in exchanges in which the persona urged the target forward, writing among other things "we need more like you" and "I've just been waiting for the opportunity." And in a motion filed in *United States v. Fox*, W.D. Mich. No. 1:20-

CR-183, the defendants attributed to Federal Bureau of Investigation Special Agent Henrik Impola, in a December 10, 2020 interrogation of a confidential human source, the statement: "We have a saying in my office. Don't let the facts get in the way of a good story." These facts concern federal actors against whom no claim is asserted. They are pleaded as the setting in which these Defendants acted and as evidence of the character of the investigation whose product they used.

45. Plaintiff was transported to the Michigan State Police post at Cadillac and questioned there by an agent of the Federal Bureau of Investigation whom Plaintiff already knew from an unrelated matter. The Michigan Department of Attorney General has publicly stated that the charges against Plaintiff and his co-defendants followed "the execution of multiple search and arrest warrants in a joint operation with the U.S. Attorneys of the Eastern and Western Districts of Michigan, the Federal Bureau of Investigation and the Michigan State Police." On information and belief, one or more members of the Michigan State Police, including the named Defendant and one or more of the Unknown Defendants, were present at or participated in that questioning.

46. Plaintiff was never charged with any federal offense.

**D. The state charge and the three-month detention**

47. Following his interrogation Plaintiff was transported to the Antrim County Jail and charged, on the complaint of the Michigan Department of Attorney General, in the 86th Judicial District Court Case No. 2020900971, CTN 96-20900971-01, and thereafter in the 13th Judicial Circuit Court for the County of Antrim as Case No. 22-5168-FH. He was charged with providing material support for an act of terrorism, contrary to MCL 750.543k(1)(b), a twenty-year felony, and with carrying or possessing a firearm during the commission of a felony, contrary to MCL 750.227b, carrying a mandatory consecutive two-year term. The charged offense period was November 1, 2019 through October 7, 2020, and the charged situs was Elk Rapids Township,

Antrim County. His co-defendants were Shawn Michael Fix, Michael John Null and William Grant Null. The prosecution was conducted by Assistant Attorney General Gregory J. Townsend (P35857) for Attorney General Dana Nessel. The register of actions in that case records the arresting agency as the Michigan State Police, the assigned judge as Charles M. Hamlyn, a fifteen-day jury trial noticed to commence August 21, 2023 at Bellaire, and adjudication by jury verdict on September 15, 2023. Assistant Attorney General William A. Rollstin (P40771) appears as prosecuting counsel of record.

48. Plaintiff was detained pursuant to legal process – the felony warrant issued on the sworn complaint of a complaining witness whose identity is redacted from the copy of the charging documents in Plaintiff's possession. On December 7, 2022, Judge Michael Stepka of the 86th District Court bound Plaintiff over for trial on both counts.

49. That process was not supported by probable cause. On information and belief, the affidavit on which it issued represented the recording of the August 29, 2020 vehicle ride as a complete and sequential account of what was said, when in fact the recording had been edited and reordered, and omitted that the portions of it tending to exculpate Plaintiff had been removed. Plaintiff has never been permitted to see the affidavit. The identity of the complaining witness is redacted from the only copy of the charging documents in his possession, and the affidavit is in the exclusive custody of Defendants and of the prosecuting authority.

50. Plaintiff was held as a pretrial detainee for approximately three months.

51. He was convicted of nothing, then or ever.

### E. The conditions of that detention

***Pleaded as the measure of the damages caused by the unlawful detention alleged in Count I, not as independent claims. No count in this Complaint is asserted against the County of Antrim or any corrections officer.***

52. On intake, Plaintiff declined a nasopharyngeal swab for COVID-19 testing. As the direct and stated consequence of that refusal he was placed in solitary confinement for approximately fourteen days, without notice, hearing, statement of reasons, opportunity to be heard, or review.

53. The isolation cell had no window and no clock. Plaintiff could not determine the time of day except from meal service and the operation of the cell lighting.

54. The cell lighting was never fully extinguished. At no point in fourteen days was Plaintiff afforded darkness adequate for sleep. He suffered sleep deprivation, disorientation and headaches.

55. On release into general population Plaintiff was barred from the facility's exercise equipment. He was not permitted outdoors, for any period of time, for any purpose, at any point in approximately three months of confinement. The single dayroom window was clouded and opaque and afforded no view out. He suffered physical deconditioning and psychological harm.

56. On one occasion the entire inmate population was removed onto buses while the jail was fogged for disinfection. Because of his classification, Plaintiff alone among all inmates was placed in full shackles and cuffed at the waist, and was displayed in that condition before the entire population.

57. As the inmates were returned inside, a corrections officer handling a police dog stated in substance that they had better not run or he would release the dog on them. No inmate had fled

or attempted to flee. Plaintiff was in full restraints and physically incapable of running. He reasonably apprehended that a trained animal was about to be set on him.

58. On another occasion, as Plaintiff carried stacked meal trays out to officers collecting them, the same officer announced, “he’s charging us!” Plaintiff stopped where he stood. The officer then laughed and explained that officers are trained to make that announcement, and that saying those words is all that is required before they may go “hands on.” Plaintiff thereafter stopped carrying trays out, forgoing a permitted activity out of fear of assault under a fabricated pretext.

59. On another occasion a detainee was beaten by another detainee in circumstances in which no corrections officer was present in the unit. Plaintiff, believing the assault was likely to end in the victim’s death, pulled the aggressor off and placed himself bodily between the two men, exposing himself to serious injury, and held that position until officers came through on a routine inspection. The jail administrator afterwards thanked Plaintiff and acknowledged the outcome would otherwise have been severe.

60. Plaintiff was seen by jail medical staff once in three months, for an infected navel.

61. Plaintiff does not allege that the jail’s staff as a whole treated him badly. Apart from the conduct described above he found them courteous, the food was prepared on site and was good, and he had access to a substantial collection of books. He pleads these facts because they are true and because the injury he complains of is being held at all.

62. Every hour of the confinement described in ¶¶ 52–60 was suffered under process that was not supported by probable cause. Had Defendants not procured that process, Plaintiff would have been at home with his children.

**F. Collection of Plaintiff's DNA**

63. While confined, Plaintiff was subjected to a buccal swab for DNA collection, in connection with the charge then pending in 86th Judicial District Court Case No. 2020900971, CTN 96-20900971-01, and thereafter in the 13th Judicial Circuit Court for the County of Antrim as Case No. 22-5168-FH. The charging documents directed that a DNA identification profiling sample be collected before sentencing or disposition if not taken at arrest. Plaintiff does not challenge the taking of the swab. Cf. *Maryland v. King*, 569 U.S. 435 (2013).

**G. Seizure of Plaintiff's electronic devices**

64. Among the items seized on October 7, 2020 were two mobile telephones, a desktop computer and a memory card. The physical devices were returned to Plaintiff on February 2, 2024.

**H. Continuing injury**

65. Plaintiff was working as a private security contractor when he was arrested. On information and belief he has been unable to obtain comparable work since.

66. In and after March 2024 Plaintiff resumed the political activity for which he had been prosecuted. He attended regular public meetings of township boards in Wexford County, including the board of South Branch Township, and presented, for the boards' consideration, a proposed resolution that would declare the township a "Second Amendment Sanctuary" in the event federal law were to prohibit semi-automatic firearms. He left copies of the resolution with the boards. Presenting a proposed resolution at a public meeting is speech, assembly, and petition for the redress of grievances, all protected by the First Amendment.

67. On April 9, 2024, the Clerk of South Branch Township, Wexford County, wrote from a personal electronic mail account to each member of the Township Board, separately and individually, in anticipation of Plaintiff's appearance. Each message stated: "Eric Molitor was

involved in the Gretchen Whitmer kidnap plot but was not charged. You can look him up and read about him." Each message closed, "I am emailing all board members separately." Plaintiff obtained these messages in 2024 through a request under the Michigan Freedom of Information Act.

68. Both halves of that statement were false. Plaintiff was charged – in Antrim County Circuit Court – and a jury had acquitted him of every charge approximately seven months earlier, on September 15, 2023. As made, the statement was materially worse for Plaintiff than the truth would have been: it asserted that he had in fact taken part in the conspiracy, and it implied that he had escaped prosecution for doing so.

69. In the same messages the Clerk directed that the Board "can give Molitor his three minutes to speak in public comment but not to encourage a question and answer session," and stated that she personally would not sign such a resolution. On April 10, 2024 she wrote to the Clerk of Wexford County that she had "encouraged our supervisor to give him his three minutes of public comment then dismiss." The same day, the Clerk of Wexford County forwarded the material – including an attachment bearing Plaintiff's name – to the electronic mailing list of every township clerk in the county.

70. On or about April 23, 2025 Plaintiff was hired by a recycling business in Cadillac, Michigan. He was terminated approximately seven and a half hours later. A co-owner told him the reason: the other owner had recognized his name and did not want him working there because Plaintiff "was involved in the Whitmer kidnap plot" – a matter of which a jury had acquitted him nineteen months earlier.

71. Plaintiff asked the owners in writing for a statement of the reason for his termination. They asked why he needed it. He explained. They did not dispute his account of what he had been told, and they did not provide the statement.

72. On information and belief at least one other employer has declined to hire Plaintiff for the same reason and has declined to say so in writing.

73. Plaintiff has thereby suffered and continues to suffer lost earnings, lost earning capacity, and reputational injury, and the accusation the State made against him in 2020 continues to be repeated about him by public officials in a form more damaging than the truth. This Part pleads damages. Plaintiff asserts no independent claim for injury to reputation, which is not by itself a protected liberty interest, *Paul v. Davis*, 424 U.S. 693 (1976), and he asserts no claim in this action against any township or county officer.

**VI. ALLEGATIONS DEFEATING QUALIFIED IMMUNITY**

74. Plaintiff pleads the following to meet the second prong of qualified immunity as to Counts I, II and III.

75. It was clearly established well before October 2020 that officials may not detain a person pursuant to legal process unsupported by probable cause. *Manuel v. City of Joliet*, 580 U.S. 357 (2017).

76. It was clearly established that an officer may not secure legal process by an affidavit he knows to be false, or by omitting facts he knows to be material to the probable-cause determination. *Franks v. Delaware*, 438 U.S. 154 (1978).

77. It was clearly established that officials may not fabricate evidence against a person and use it to deprive him of liberty. *McDonough v. Smith*, 588 U.S. 109 (2019).

78. It was clearly established that the State must disclose evidence favorable and material to the accused. *Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419 (1995).

79. It was clearly established that officials may not investigate, arrest, or prosecute a person in retaliation for protected speech and association. *Nieves v. Bartlett*, 587 U.S. 391 (2019); *Hartman v. Moore*, 547 U.S. 250 (2006).

## VII. CLAIMS FOR RELIEF

Plaintiff incorporates by reference each preceding paragraph as though fully set forth in each Count below.

### COUNT I – 42 U.S.C. § 1983

### Fourth and Fourteenth Amendments – Unlawful Pretrial Detention Without Probable Cause

***Against Unknown Michigan State Police Officers 1–10***

80. Defendants caused legal process to issue against Plaintiff and caused him to be detained pursuant to it.

81. That process was not supported by probable cause, for the reasons stated at ¶ 49.

82. On information and belief Defendants omitted from the affidavit supporting that process what they knew or should have known about Plaintiff's paid security work for men who identified themselves as Deputy United States Marshals, and about the content of his communications.

83. Plaintiff was thereby seized and detained for approximately three months in violation of the Fourth Amendment as incorporated against the States by the Fourteenth. *Manuel v. City of Joliet*, 580 U.S. 357 (2017).

84. The proceeding terminated in Plaintiff's favor by verdict of acquittal on September 15, 2023, and this claim accrued then. *Thompson v. Clark*, 596 U.S. 36 (2022).

85. As a direct and proximate result Plaintiff suffered the loss of three months of his liberty and every injury described at ¶¶ 52–62, together with the continuing injury described at ¶¶ 65–73.

**COUNT II – 42 U.S.C. § 1983**

**Fourteenth Amendment – Fabrication of Evidence and Suppression of Exculpatory Evidence**

***Against Unknown Michigan State Police Officers 1–10***

86. Defendants knowingly fabricated, falsified or materially mischaracterized evidence against Plaintiff and used it to initiate and maintain criminal proceedings against him.

87. On information and belief, the prosecution presented to the jury a recorded interview Plaintiff gave to the journalist Eric VanDussen after his release, in a materially altered or selectively edited form that changed its meaning.

88. Defendants also suppressed evidence favorable and material to Plaintiff, including the fact and the exculpatory significance of his paid security work for men who identified themselves as Deputy United States Marshals. *Brady v. Maryland*, 373 U.S. 83 (1963).

89. Plaintiff was deprived of his liberty as a result. This claim accrued on favorable termination. *McDonough v. Smith*, 588 U.S. 109 (2019).

**COUNT III – 42 U.S.C. § 1983**

**First Amendment – Retaliation for Protected Speech, Assembly and Association**

***Against Unknown Michigan State Police Officers 1–10***

90. Plaintiff engaged in activity protected by the First Amendment: political speech, public assembly at the June 2020 rallies, and association with the Cadillac Civil Defense, a lawful group that coordinated its activity with law enforcement. See ¶¶ 22–27.

91. Defendants took adverse action against Plaintiff – investigating him, causing him to be charged, and causing his three-month detention – because of that protected activity.

92. That adverse action would chill a person of ordinary firmness from continuing to engage in such activity. Plaintiff has continued to speak and to petition notwithstanding, and he has done so at a continuing cost: as set out at ¶¶ 66–73, a township clerk circulated a false account of his prosecution to the very board he was about to address and arranged for his participation to be curtailed, and an employer dismissed him within a day of hiring him. The objective test does not require that Plaintiff have been silenced, and he was not.

93. There was no probable cause for the charge. *Nieves v. Bartlett*, 587 U.S. 391 (2019); *Hartman v. Moore*, 547 U.S. 250 (2006).

94. The investigation of which Plaintiff was a subject proceeded under a warrant authorizing the seizure of "extremist literature and paraphernalia in the form of videos, books, pamphlets, flags, uniforms, patches and other regalia" – expressive material identified by viewpoint, with no limitation to the offense under investigation. See ¶¶ 35–36.

95. Officers acting in that investigation carried away from Plaintiff's vehicle a poster reading "ANTIFA for Biden/Harris 2020" and "Justice for Breonna," which was evidence of nothing. See ¶¶ 42–43.

96. The deployment of approximately forty officers, an armored personnel carrier and aerial drones to arrest one unarmed man at a family dinner, and the leveling of firearms at five children in the course of it, bore no relationship to any threat Plaintiff presented and is itself evidence of retaliatory animus. See ¶ 44.

97. As a direct and proximate result Plaintiff suffered the injuries described at ¶¶ 52–62 and ¶¶ 65–73.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Plaintiff's detention on process unsupported by probable cause violated the Fourth and Fourteenth Amendments;

B. Award compensatory damages against the individual Defendants in an amount to be determined at trial, including damages for the loss of liberty, for the physical and psychological injuries suffered in confinement, and for lost earnings and lost earning capacity;

C. Award exemplary and punitive damages against the individual Defendants;

D. Award attorney fees and costs under 42 U.S.C. § 1988;

E. Award pre- and post-judgment interest;

F. Grant leave to amend to substitute the true names of the Unknown Defendants upon their identification, and grant such further relief as may be necessary to permit Plaintiff to pursue his claims against them; and

G. Grant such other and further relief as is just.

**JURY DEMAND**

Plaintiff demands trial by jury on all claims so triable.

Dated: September 15, 2026

Respectfully submitted,

LEX FORI PLLC

Carson J. Tucker (P62209)
*Attorney for Plaintiff*
1250 W. 14 Mile Rd., Suite 3020
Troy, MI 48083-1030
(734) 887-9261
cjtucker@lexfori.org